IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LE THI JACKSON, | No. C-08-02770 EDL |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiff Le Thi Jackson ("Plaintiff"), owner of the New Market, filed this lawsuit seeking judicial review of an administrative action permanently disqualifying Plaintiff's store from participating in the Food Stamp Program ("FSP"). Plaintiff filed a motion for summary judgment challenging the finding by the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA") that Plaintiff was engaged in the trafficking of food stamps and seeking relief from disqualification from the FSP. The United States of American ("Defendant" or "United States") filed a cross motion for summary judgment. Those motions came on for hearing before this Court on March 31, 2009. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby denies Plaintiff's motion for summary judgment, and grants Defendant's motion for summary judgment, for the reasons stated at the hearing and as follows.

## I. BACKGROUND

Plaintiff's complaint alleges that: (1) Defendant's decision to permanently disqualify Plaintiff from the FSP was arbitrary and capricious; (2) Defendant's decision to find Plaintiff ineligible for the Civil Money Penalty in lieu of disqualification violated 7 C.F.R. § 278.6; and (3) permanent disqualification of Plaintiff from the FSP violated due process of law in that a) there is no

rational basis in the law for that action, b) it proceeded with insufficient notice and an opportunity to be heard before a neutral magistrate, and c) Defendant failed to make reasonable and rational findings under the appropriate legal standard.  Plaintiff characterizes her claims somewhat differently in her summary judgment motion and argues that there is insufficient evidence in the record to sustain a finding by preponderance of the evidence that Plaintiff engaged in trafficking.  She also challenges the disqualification sanction and argues that Defendant denied her due process by failing to disclose an investigator's report during the administrative process and failing to give Plaintiff an opportunity to rebut that report, improperly shifting the burdens of proof applicable in the administrative process, and making allegations that were unconstitutionally vague.  Defendant argues that it properly imposed the permanent disqualification sanction because it found egregious violations of the Food Stamp Act, 7 U.S.C. § 2011 ("the Act") and the governing regulations, 7 C.F.R. § 270 through § 282 (collectively referred to as "the Program").  According to Defendant, its investigation revealed that Plaintiff repeatedly violated the program by accepting food stamp benefits from customers in exchange for consideration other than eligible food products.  In addition, Defendant argues that there was no due process violation, as Plaintiff received all the evidence to which she was entitled during the administrative process.

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FRCP 56(c).  Material facts are those which may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that

1  demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317,
2  323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively
3  demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue
4  where the nonmoving party will bear the burden of proof at trial, the moving party can prevail
5  merely by pointing out to the district court that there is an absence of evidence to support the
6  nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party must
7  then set forth specific facts showing that there is some genuine issue for trial in order to defeat the
8  motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

9        B.      Review of Food Stamp Program Disqualification

10  The statutory authority for judicial review of an administrative action provides, in part, "The
11  suit in the United States district court . . . shall be a trial de novo by the court in which the court shall
12  determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15).
13  "District courts in the Ninth Circuit are to apply a bifurcated standard of review in proceedings
14  under this section." Wehab v. Yeutter, 743 F. Supp. 1353, 1354 (N.D. Cal. 1990). "Whereas the
15  FNS finding that a firm violated the Food Stamp Act is reviewed de novo, review of the sanction
16  imposed by the FNS is governed by the arbitrary and capricious standard." Wong v. United States,
17  859 F.2d 129, 132 (9th Cir. 1988). Plaintiff bears the burden of establishing by a preponderance of
18  the evidence that the violations found in the administrative action did not occur. Brooks v. USDA,
19  841 F. Supp. 833, 839 (N.D. Ill. 1994), aff'd 64 F.3d 251. The District Court may look beyond the
20  administrative record and reach its own factual and legal conclusions. Kahin v. United States, 101
21  F. Supp. 2d 1299, 1302 (S.D. Cal. 2000).

22  A de novo standard of review as to the existence of a violation does not preclude summary
23  judgment in favor of the government. See Wehab, 743 F. Supp. at 1357-58; see also Kahin, 101 F.
24  Supp. 2d at 1302 (noting that the burden is placed upon the store owner to prove by a preponderance
25  of the evidence that the violations did not occur and "if the store owner fails to meet this burden and
26  fails to demonstrate a material dispute of fact as to the existence of a program violation, summary
27  judgment may be granted in favor of the government"). In Wehab, the Court considered both the
28  agency's decision to disqualify Plaintiff's market and the penalty on cross-motions for summary

judgment. Plaintiff argued that the court could not grant summary judgment against the Plaintiff in light of the declarations that Plaintiff submitted from store clerks in which the employees denied recalling violative sales. The Court disagreed, explaining that:

> These declarations consist of speculative protestations of innocence. They simply do not raise genuine issues of material fact with respect to any of the elements of the violations that are established in the administrative record. In other words, because the Government has succeeded in establishing through admissible evidence that violations occurred, plaintiff's evidence -- or the inferences to be drawn therefrom -- must affirmatively contradict what the Government represents as fact. Merely raising a "metaphysical doubt" that the facts are otherwise is not sufficient.

Id. (internal citations omitted).

The standard of review of the penalty is different: "[o]nce the district court finds that violations were committed, it may not overturn the sanction unless it finds that the sanction was arbitrary and capricious." Wong, 859 F.2d at 132. The Court must examine the "sanction imposed by the FNS in light of the administrative record to judge whether the agency properly applied the regulations [and] to determine whether the sanction is unwarranted in law . . . or without justification in fact." Id. (quotation omitted).

## III. UNDISPUTED FACTS

### A. The Food Stamp Program

Congress designed the FSP to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. In creating the FSP, Congress determined that food stamps may only be redeemed in exchange for food items from approved participating retail food stores. 7 U.S.C. § 2013(a). Coupons may not be redeemed for ineligible items. Coupons issued and used as provided by statute are redeemable at face value by the Secretary of the USDA. 7 U.S.C. § 2013(a).

The statutory and regulatory schemed by which authorized stores are bound provides for their disqualification (or a civil money penalty) if they accept or use food stamps in violation of the program. 7 U.S.C. § 2021(a). FNS shall permanently disqualify a store on the first occasion of a violation based on trafficking under the Program. 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1)(I). Trafficking is "the buying or selling of coupons . . . or other benefit instruments for

4

cash or consideration other than eligible food." 7 C.F.R. § 271.2. A finding of a violation may be made on the basis of "facts established through on-site investigations, inconsistent redemption data, [or] evidence obtained through a transaction report under an electronic benefit transfer system." 7 C.F.R. § 278.6(a). Any retailer whom the FNS seeks to disqualify from the program shall be given notice via a charge letter and "shall have a full opportunity to submit to the FNS information, explanation, or evidence concerning" the reasons for disqualification. 7 C.F.R. § 278.6(b)(1). The notice must inform the retailer of the charges or actions that the FNS believes to constitute grounds for seeking the retailer's disqualification. 7 C.F.R. § 278.6(b)(2).

In the San Francisco Bay Area, the Program no longer utilizes food coupons or stamps. Rather, the Program uses an Electronic Benefit Transfer ("EBT") system, in which benefit recipients are issued plastic cards, similar to credit cards, that have magnetic strips encoded with a number that is linked to the recipient's data. Authorized stores run the cards through a point of sale device. The device interacts with a host computer that processes and stores information and communicates with other computers as necessary. The data is recorded for various accounting and reporting purposes. EBT enables the FNS to track transactions, and to identify the type and pattern of transactions that are indicative of trafficking.

B.  The FNS Administrative Record

Plaintiff is the owner of the New Market, doing business at 7475 Bancroft Avenue in Oakland, California. Stipulated Fact No. 1. On October 26, 2007, Defendant's Officer-in-charge, Teresa Toups, sent a charge letter to Plaintiff, detailing the reasons FNS believed the store had violated program regulations. Administrative Record ("AR") 48-64. The charge letter states that during the months of April 2007 though September 2007, FNS found a number of EBT transactions that established a clear and repetitive pattern of unusual, irregular, and/or inexplicable FSP activity for the type of store. AR 48. FNS identified numerous transactions which exhibited unusual and irregular FSP activity, which were set forth in the attachment to the charge letter. AR 51-64. The list of transactions included details such as dates, times, recipient numbers, and monetary amounts for each irregular instance. Id.

The charge letter and its attachments noted that the unusual activity included:

1) Large even dollar transactions in the form of 138 high dollar transactions (ranging from 20 to 154 dollars) ending in a same cents value (i.e. $XX.00);

2) Multiple transactions of individual household accounts in the form of 25 exhibits where multiple withdrawals were made from a single food stamp recipient's account within unusually short time frames;

3) Transactions depleting household allotments in the form of 11 exhibits where EBT transactions depleted the majority or all of a recipient's monthly food stamp benefit in unusually short time frames; and

4) Excessively large transactions in the form of 30 exhibits where excessively large withdrawals ranging from 100 to 155 dollars were made from the accounts of food recipients during multiple single EBT transactions. AR 48-64.

Plaintiff responded to the charge letter on November 7, 2007 and denied the trafficking as alleged. AR 43-47. In response to the evidence that multiple withdrawals were made from a recipient's account within short time frames, Plaintiff stated that her customers make small purchases first in order to check the balance on their account, and then proceed to purchase groceries based on this information. She also stated that sometimes customers make a large purchase and forget something, and then make an additional purchase a short time later. AR 43. With regard to the charge that there were numerous high dollar transactions ending in no cents, Plaintiff stated that customers requested that they be charged an even amount on their account and pay the remaining balance in cash. AR 43. With regard to the charge that there were transactions in which recipients depleted the majority or all of their FSP benefit in an unusually short time, Plaintiff stated that she does not monitor her customers' spending habits. AR 43. In response to the charge that FSP recipients made large withdrawals from their accounts at her store, Plaintiff stated that her store carries high-priced specialty items such as chitterlings, seafood, and smoked meats, which can easily exceed $100 when purchased together. Id. In support of this, Plaintiff provided copies of 16 ATM receipts from July through September 2007 showing total amounts in the range of $47.50 to $200. AR 44-47. Those receipts do not itemize the products purchased, although some do list a "cashback" amount as zero. Id.

6

1   FNS conducted a store visit on October 3, 2007. This was the only occasion on which the
2   FSP investigator visited the store with regard to the trafficking charge. Stipulated Fact No. 11. On
3   December 3, 2007, FNS found that violations did occur at the store, and Plaintiff received another
4   letter from Ms. Toups so stating, and determining that Plaintiff was not eligible for a trafficking civil
5   monetary penalty because Plaintiff failed to submit sufficient evidence to demonstrate that the store
6   had established and implemented an effective compliance policy and program. AR 22-23.

7   On December 6, 2007, Plaintiff requested administrative review of the permanent
8   disqualification, which was granted. AR 19, 21. During the appeal process, Plaintiff submitted the
9   same explanations for the irregular EBT transactions. AR 13-18. In reviewing the disqualification
10  decision, the Administrative Review Officer considered whether New Market was the type of store
11  that could support large and/or multiple transactions in the dollar amounts exhibited. During the
12  store visit on October 3, 2007, the FNS representative observed that Plaintiff's store carried an
13  ample variety of low priced fresh fruits and vegetables, but had limited amounts of fresh seafood and
14  chicken wings. AR 8, 25-28. The store carried a small amount of smoked ham hocks and had a
15  single, one-gallon bag of chitterlings for $25. Id. The storage cooler for the store contained
16  beverages and a few boxes of fresh vegetables, but no other reserve food stock. AR 8. The
17  checkout area was small, with one cash register. The store had hand baskets, but no scanners,
18  conveyor belts, or shopping carts. Id. In addition, the visit took place during the time of month
19  when FSP benefits are replenished and abundant. AR 8.

20  The reviewing officer did not find it a reasonable explanation that recipients would spend
21  cash when they could use available FSP benefits and conserve their cash for ineligible items,
22  resulting in transactions with same cents value. AR 9. In addition, he found that this explanation
23  did not adequately account for why Plaintiff's store had an unusually high number of customers
24  requesting transactions of even dollar value, when the same customers were not making similar
25  requests at other stores. AR 9, 36-40. As to multiple withdrawals from a single account with an
26  unusually short time frame, the reviewing officer did not find Plaintiff's explanation that recipients
27  purchased small items to check their balance before buying their groceries plausible. First, the EBT
28  device permits immediate balance inquiries. In addition, more than half of the transactions

7

identified in the attachment to the charge letter showed that larger purchases were made prior to smaller purchases. AR 54-57. The reviewing officer also cited an example in which a FSP recipient made an EBT transaction for $4.26, and then only 2 minutes and 18 seconds later made a $100 purchase, noting that to be legitimate, the recipients would have to gather their remaining groceries, and the clerk would have to separate out eligible items, add the eligible food items, and complete the transaction in a very short time period. AR 8.

Regarding the EBT transactions where food stamp recipients depleted the majority or all of their FSP benefits in one day, the reviewing officer noted that the transactions at New Market were questionable because they displayed characteristics inconsistent with the nature and extent of the store's stock and facilities. AR 11. While FSP recipients often shop early in the month, most FSP households do not spend all or a majority of their FSP benefits in one or two days, especially at a small store with limited food stock. AR 11, 33-34, 58-59.

As to the large withdrawals, Plaintiff stated that the large amounts were due to purchases of higher prices items, such as chitterlings, seafood and meat. AR 44. The reviewing officer noted that during the store visit, Plaintiff's store only had one gallon bag of chitterlings for $25 and a small amount of seafood, fresh chicken wings, and smoked meats. AR 10, 25-27. The reviewing officer also noted that markets close to the New Market carried less expensive chitterlings and that a large number of FSP recipients traveled long distances to the New Market despite having access to closer and better stocked stores, including supermarkets. AR 6, 33-40.

With regard to the 16 ATM receipts submitted by Plaintiff, the reviewing officer found that these receipts were not indicative of EBT card usage, as there was no evidence of what was purchased. AR 10, 44-47. The charges could have been for various kinds of transactions, such as cash withdrawals or cash advances, having nothing to do with purchases at all. AR 10.

Accordingly, the reviewing officer found that there were many questioned transactions for which no explanation could be found other than the trafficking of program benefits, and upheld the disqualification sanction. AR 5-12. Plaintiff filed a final administrative appeal to the USDA, which was denied within 30 days of filing this lawsuit. Stipulated fact No. 4.

1    Plaintiff now argues that the investigator failed to observe the volume of specialty items and
2 amount of stock alleged by Plaintiff to be ordinarily on hand at the New Market, and that she
3 maintains a large and unique stock of specialty items. Pl's Mot. at 5. She claims that she was not
4 given an opportunity to submit evidence in support of her claim that the investigator's conclusions
5 were in error. She notes that her store is unique in its geographic area in that it carries numerous
6 specialty and ethnic food items demanded by the local community. Id. Plaintiff, however, has not
7 submitted any new evidence before this Court to support these arguments, despite her opportunity to
8 do so. Thus, the administrative record is the only evidence before the Court.

## IV.   THE CROSS-MOTIONS

### A.   Propriety of Administrative Action

Plaintiff's store was permanently disqualified as a result of the FNS's findings that Plaintiff trafficked in food stamps. Here, the FNS relied on the irregular and inexplicable patterns in the EBT data, as well as on the amounts in the transactions compared to inventory store goods, to find evidence of Plaintiff's trafficking of food stamps. The law is clear that FNS may find a violation based upon on-site investigations and EBT transaction reports. 7 U.S.C. § 2021(a) (recognizing evidence garnered through EBT system); 7 C.F.R. § 278.6(a); Kahin, 101 F. Supp. 2d at 1304. Plaintiff's argument that these EBT transactions or "pattern" data cannot meet the preponderance of the evidence standard (see Pl. Mot. at 9-10) therefore fails.

In order to preclude summary judgment, Plaintiff must raise material issues of fact as to each of the violations charged against her store that are established in the administrative record. See Kahin, 101 F. Supp. 2d at 1303 (reviewing officer upheld disqualification as store could not explain difference in low inventory and high food stamp redemption and never proffered an explanation for the rapid, repetitive transactions to the same customer indicated in the EBT data); Wehab, 743 F. Supp. at 1358. Here, Plaintiff has not raised a material dispute as to most of the violations and thus as to the overall finding of trafficking.

Even if the Court were to agree that Plaintiff's explanations about the spending habits of her customers tend to "negate some of the inferences from the EBT data and raise some material issues of fact, they do not sufficiently account for all the suspicious activity." Kahin, 101 F. Supp. 2d at

9

1303. Plaintiff failed to provide evidence to explain the more than 200 suspicious transactions here.

For example, Plaintiff has never proffered an explanation for why there were so many transactions that depleted all or a majority of a household's monthly benefit allotment within an unusually short time frame. Plaintiff's statement that she does not monitor or limit the number of times a customer uses their EBT benefit card or how much they spend is not an explanation. This statement of ignorance simply does not account for the strange pattern noted in the charge letter, which is inconsistent with government reports on food stamp shopping patterns. AR 11 (citing Analysis of EBT Benefit Redemption Patterns). While Plaintiff had the opportunity to submit customer declarations to the Court explaining this spending pattern, she did not do so.

In addition, Plaintiff's explanation for the number of consecutive transactions involving large dollar amounts occurring within a span of only few minutes does not make sense, because customers would not need to make a small purchase first to check the balance on their card as the EBT point of sale machine is programmed to permit immediate balance inquiries. Nor does it adequately address the rapid consecutive transaction sets conducted on the day that the customers' benefits were replenished and their balances full. Plaintiff also did not satisfactorily explain the transactions which began with a large purchase that was rapidly followed by a smaller one. Although she argued that the smaller purchase could be of a forgotten item, the subsequent purchases were at times for amounts that exceeded a nominal, afterthought purchase amount.

Plaintiff's explanation for the many large even dollar transactions – that they are the result of customers telling the clerk that they want to spend only an even dollar amount and pay the cash for the difference – is wholly unpersuasive. As the reviewing officer noted, it is not reasonable that a customer would choose to spend cash when they can use available FSP benefits, especially right after receiving their monthly allotment. AR 9. Put another way, there appears to be no disadvantage to putting an uneven dollar amount on an EBT card, so this type of customer behavior makes no sense. Again, Plaintiff submitted no new evidence to this Court explaining such behavior.

Finally, Plaintiff has failed to rebut or raise material issues of fact as to the adequacy of chitterlings, seafood, and other high priced specialty foods to account for the high dollar value of the transactions. While Plaintiff contends that she was not given notice of the field officer's conclusion

10

1  that these items were not well-stocked in her store (an issue addressed separately below) and
2  contests this conclusion, she has provided no evidence to the contrary to the Court. Thus, no
3  evidence in the record refutes the government's evidence of the limited capacity of the cold storage
4  at the store and the dearth of specialty or ethnic goods. While Plaintiff provided ATM sales slips to
5  show that customers are spending high dollar amounts, these receipts are not itemized and could
6  include non-eligible items. AR 17-18. In other words, these sale slips are not evidence as to what
7  customers spend on eligible items. Applying the de novo standard of review, the Court concludes
8  that Plaintiff failed to demonstrate a material dispute of fact as to the existence of the trafficking
9  violation.

### B. Review of Disqualification Sanction

The governing regulation requires that a store be permanently disqualified on the first occasion of a violation based on trafficking. 7 U.S.C. § 2021(b)(3)(B). A store may submit a request for a civil money penalty in lieu of a permanent disqualification within 10 days of receiving the charge letter. 7 U.S.C. § 2021(a); 7 C.F.R. § 278.6(a). The store must submit to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program. 7 C.F.R. § 278.6(I). A store owner who does not timely request a civil money penalty cannot avoid the permanent disqualification. Id. Here, Plaintiff did not request a monetary penalty in lieu of permanent disqualification from FSP. AR 43-47, 22. Therefore, the regulatory criteria were adhered to, the disqualification period imposed was neither arbitrary nor capricious, and there is no basis for altering the agency's decision.

### C. Due Process

Plaintiff's denial of due process claim consists of two arguments: 1) that she was denied due process of law because she was not provided a copy of the investigator's report (also known as the "Alert Investigation Explanatory Notes" at AR 25-42) and an opportunity to rebut the evidence in the report, and 2) that she was denied due process when the burden was placed on her to respond to unconstitutionally vague allegations. Neither argument is meritorious.

Courts have held that the statutory and regulatory scheme provide store owners with due process protection. See, e.g., Kim v. United States, 121 F.3d 1269, 1274 (9th Cir. Cal. 1997) ("A

11

trial de novo, in which the existence of a violation is examined afresh, and the parties are not limited in their arguments to the contents of the administrative record, satisfies the strictures of procedural due process."); <u>Ibrahim v. United States</u>, 650 F. Supp. 163, 167 (N.D.N.Y 1987), aff'd 834 F.2d 52 (2d Cir. 1987) (as the statutory scheme provides notice of the charges, an opportunity to respond in writing or in person, opportunity to appeal to a review officer, and a judicial hearing, "the procedures for administrative and judicial review provide plaintiff with all the process that is due").

The regulations require that before making a final administrative determination, the FNS must send a charge letter that specifies the violations or actions which FNS believes constitute a basis for disqualification or imposition of a civil money penalty or fine. 7 C.F.R. § 278.6(b). The October 26, 2007 charge letter sent to Plaintiff outlined in detail the suspicious sets of EBT transaction through 14 pages of attachments, as described above. AR 48-64. The attachments provided data regarding the date, time, household number, dollar amount, and method of input for each suspicious or irregular transaction. AR 51-64. The charge letter and the specific data in the attachments are not unconstitutionally vague, and Plaintiff provides no authority to the contrary.

As to Plaintiff's claim that she was denied due process when she did not have the opportunity to review or rebut the explanatory notes, these notes are the FNS Field Office's own internal analysis completed after a store owner submits his or her response to the charge letter. The regulations do not require that FNS provide a retailer with additional documents beyond the charge letter, which sets forth the alleged violations that the retailer must address and explain. 7 C.F.R. § 278.6(b). Plaintiff identifies alleged inaccuracies in the Explanatory Notes, including the "capacity of the cold storage" at the store and the lack of specialty goods which would draw customers to the store. Plaintiff, however, only attempted to refute one of the four suspicious circumstances outlined in the charge letter – the excessively large transactions – by stating that the transactions were supported by sales of specialty items which could add up to $100 or more. AR 7. Even assuming that high sales of specialty goods occurred, they would not explain the large number of even dollar transactions or the multiple transactions of individual household accounts within unusually short time frames, for example. Importantly, in this proceeding, Defendant provided Plaintiff with a copy of the sealed investigative report. Plaintiff had an opportunity to rebut the facts contained in that

1 report here, but chose not to do so. Accordingly, there was no violation of due process.

## V.  CONCLUSION

In accordance with the foregoing, the court GRANTS Defendant's motion and DENIES Plaintiff's motion. This order terminates the case and any pending motions. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 3, 2009

ELIZABETH D. LAPORTE
United States Magistrate Judge